**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **AKIA STANTON,** | § | |
| | § | |
| | § | **CIVIL ACTION NO.  6:18-CV-00479-JDK** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JARVIS CHRISTIAN COLLEGE,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## <u>REPORT AND RECOMMENDATION OF</u>
## <u>UNITED STATES MAGISTRATE JUDGE</u>

Before the Court is Defendant Jarvis Christian College's ("Defendant" or "Jarvis") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 11.)  Plaintiff Akia Stanton ("Plaintiff" or "Ms. Stanton") has filed a response (Doc. No. 21), to which Jarvis has filed a reply (Doc. No. 23). Upon consideration of the parties' arguments, the Court **RECOMMENDS** that Jarvis's Motion (Doc. No. 11) be **DENIED-IN-PART** and **GRANTED-IN-PART** as set forth herein.

## BACKGROUND

On September 10, 2018, Plaintiff Akia Stanton filed this action against Defendant Jarvis. (Doc. No. 1.) Plaintiff alleges claims of (1) sex discrimination and retaliation pursuant to 42 U.S.C. § 2000e-(2)(a); (2) Family Medical Leave Act ("FMLA") interference; (3) FMLA retaliation; (4) libel; and (5) negligent supervision, training, and retention. (Doc. No. 1.)

Plaintiff Akia Stanton was formerly employed by Jarvis as the Head Women's Basketball Coach from August 2014 to July 2018. (Doc. No. 1, at ¶ 14.)  Plaintiffs allegations arise out of

1

her time employed by Jarvis as the Head Women's Basketball coach. Specifically, Plaintiff alleges that during her first year of coaching, Jarvis's Vice President of the dorms, Dr. Chaney, made a pass at Plaintiff after a game by texting her, "you sure look good in that dress," which Plaintiff alleges she reported to her immediate supervisor, Dr. Friar. *Id.* at ¶ 25. Plaintiff contends that she also reported this text message to the Director of Athletics, Bobby Ladner, who "responded that if he were younger that he would have 'shot his shot too,' or would have attempted to date Plaintiff as well." *Id.* at ¶ 43. Plaintiff alleges that "on or about Wednesday January 10, 2018, Plaintiff came to Cynthia Hollman-Stancil, the Chief of Staff, Executive Assistant, Director of Administrative Management Programs and Director of Title III, and reported Mr. Ladner's treatment, his comment about Plaintiff's looks, his comment supporting Dr. Chaney's 2014 text message, and reported that Mr. Ladner would "adjust and/or scratch his crotch 'continuously' around Plaintiff's team members and in Plaintiff's presence but not around male staff." *Id.* at ¶ 47. Plaintiff contends that thereafter she filed a charge of discrimination in person at the Equal Employment Opportunity Commission's ("EEOC") office in Dallas, Texas on or about February 13, 2018. *Id.* at ¶ 51. Plaintiff alleges that Jarvis received Plaintiff's EEOC charge on February 21, 2018, and that on March 2, 2018, Mr. Ladner was overheard saying to athletes' parents that he is trying to find any reason to fire Plaintiff. *Id.* at ¶¶ 55, 56.

Plaintiff alleges that after a campus-wide meeting on June 8, 2018, she experienced an anxiety and/or panic attack. *Id.* at ¶ 76. Plaintiff saw her doctor and was issued a two-week release from work from June 8, 2018 to June 25, 2018 from her doctor's office. *Id.* Plaintiff alleges that on that same date she gave her doctor's release from work to the Director of Admissions, Mr. Wooten, as well as Dr. Singleton, the Director of Human Resources and Professional Development. *Id.* at ¶ 77. On June 15, 2018, Dr. Singleton emailed Plaintiff

informing Plaintiff that more information was needed to approve her FMLA leave request, and attaching a FMLA form for Plaintiff and her healthcare provider to complete. *Id.* at ¶ 79. Plaintiff alleges that her doctor's office faxed the completed FMLA form to Dr. Singleton's attention on that same day. *Id.* at ¶ 80. Plaintiff alleges that she emailed Dr. Singleton on June 18, 2018 to inquire as to the status of her FMLA leave and Dr. Singleton responded on June 20, 2018 stating that her FMLA paperwork was "insufficient" and "too vague and ambiguous to make a determination at the time regarding your leave request," and instructed her to submit a revised form in seven days. *Id.* at ¶ 83. Plaintiff alleges that further communications were had regarding what was needed and that Plaintiff's healthcare provider was out of the office until June 28, 2018. *Id.* at ¶ 84. Plaintiff alleges that on June 29, 2018, she was sent an email, without prior warning, stating that she was fired because she cleaned out her office, destroyed property, documents, and stole Jarvis's property. *Id.* at ¶ 85.

Based on these allegations, Jarvis has moved to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 11.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) for failure to state a claim "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to a plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted).

In other words, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[D]etailed factual allegations'" are not required. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nevertheless, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

## DISCUSSION

### A.  Title VII Claims

Jarvis moves to dismiss Plaintiff's Title VII claims because Jarvis contends that she failed to exhaust her administrative remedies. (Doc. No. 11, at 10.) Specifically, Jarvis argues that Plaintiff did not file her sex discrimination and harassment claims with the EEOC and only filed claims for wage disparity and overall quality of life between the male and female basketball teams in her charge. *Id.* at 12. Jarvis further dissects Plaintiff's Title VII claims and contends that

condescending language is not a basis for a cognizable claim under Title VII, that no facts support a retaliation claim because Plaintiff's facts allege her employment contract was renewed after she filed a charge with the EEOC, and that any allegation prior to April 19, 2017 is time barred because the charge must be filed within 300 days of when the alleged unlawful practice occurred. *Id.* at 13– 14. Plaintiff contends that her EEOC charge properly included her Title VII claims because it identified her January 11, 2018 meeting and boxes for "sex" and "retaliation" were checked. (Doc. No. 21, at 13.) Plaintiff contends that Jarvis mischaracterizes her claim and that the fulcrum of her allegations is the protected activity that occurred on January 11, 2018 and her charge was within the 300-day deadline. *Id.* Plaintiff further contends that she has alleged facts to support retaliation because she filed a charge on February 21, 2018, and on March 2, 2018, Mr. Ladner was overheard telling players' parents that he was going to fire Plaintiff and she was fired four months later. *Id.* at 14.

### a. Exhaustion of Administrative Remedies Pertaining to Sexual Harassment and Discrimination Claims

It is well-settled in the Fifth Circuit that "employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A311 f.supp.2d 573 Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006)).

"Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement." *Id.* "On one hand, the scope of an EEOC charge should be liberally construed for

litigation purposes because Title VII 'was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" *Id.* (internal citations omitted). "On the other hand, the 'primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims.'" *Id.* (citing *Pacheco,* 448 F.3d at 788–89).

To reconcile these policies, the Fifth Circuit construes an EEOC complaint "broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* The Fifth Circuit conducts a "'fact-intensive analysis' of the administrative charge that looks beyond the four corners of the document to its substance." *Id.* A Title VII lawsuit may therefore include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.*

Several district courts in the Eastern District of Texas have applied these principles to either disallow or allow a variety of claims not raised in the EEOC charge. *See, e.g.*, *Harvill v. Westward Commc'ns, LLC*, 311 F.Supp.2d 573, 585 (E.D. Tex. 2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge); *Brooks v. Firestone Polymers, LLC*, 70 F.Supp.3d 816, 841–42 (E.D. Tex. 2014) (plaintiff was foreclosed from pursuing a "failure to promote due to disability" claim where he failed to mention or allude to any facts in the charge that would have put the EEOC on notice of his disability discrimination claim); *see also Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x. 485, 490 (5th Cir. 2010) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed to either check the appropriate box on the EEOC form or describe the discriminatory conduct in the charge); *but cf. Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 798

(E.D. Tex. 2013) (defendant's motion to dismiss for failure to exhaust claims was denied where allegations of race discrimination in the charge and those in her complaint were generally similar enough to exhaust administrative remedies even though plaintiff's complaint mentioned some incidents not included in her EEOC charge); *Sellers v. BNSF Ry. Co.*, No. 1:11-CV-190, 2013 WL 1181458, at *7–8 (E.D. Tex. Mar. 18, 2013) (alleged discrimination and retaliation in 2008 could reasonably be expected to grow out of plaintiff's allegations regarding discrimination and retaliation brought forth in 2007 where claims involved the same supervisor responding to similar rule violations occurring within a short period of time).

In her charge, Plaintiff checked the "sex" "retaliation" and "other" discrimination boxes and alleged the following personal harm:

 a. On Tuesday, November 28, 2018, I complained to Athletic Director, Mr. Bobby Ladner, about the disparities in the wages and overall quality of life between the Female basketball team and the Male basketball team, but nothing was done.

 b. On Thursday, January 11, 2018 [sic], I complained to Ms. Cynthia Stancil, Chief of Staff, and Daphene Singleton, Director of Human Resources, regarding the disparities in the wages and overall quality of life between the Female basketball team and the Male basketball team, and about the way that Mr. Ladner speaks to me in a condescending manner, but nothing was done.

 c. All Male Coaches are provided with Assistant Coaches while Female Coaches are not. In addition, members of the Men's basketball program are provided with more per diem funding than members of the Women's basketball program.

(Doc. No. 11-1, at 4.)[1]

Here, Plaintiff's EEOC charge does not expressly discuss the 2014 text message and conduct of Mr. Ladner she contends is the "fulcrum" of her Title VII harassment claim. *Id.*

---

[1] The Fifth Circuit has stated that a court may consider documents attached to a responsive pleading when the documents are referred to in the pleadings and are central to plaintiff's claim. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). As Plaintiff's EEOC charge is integral to her discrimination claims, the Court will consider the charge.

Plaintiff contends that by referring to the January 11, 2018 meeting and checking the "sex" "retaliation" and "continuing action" boxes she has sufficiently included her harassment allegation in her EEOC charge. (Doc. No. 21, at 13.) Notably, in her complaint, Plaintiff does not reference a January 11, 2018 meeting, but does allege facts pertaining to a meeting on January 10, 2018 involving Mrs. Stancil and Dr. Singleton. (Doc. No. 1, at ¶ 47.) Specifically, these allegations state as follows:

> On or about Wednesday January 10, 2018, Plaintiff came to Mrs. Stancil and reported Mr. Ladner's treatment, his comment about Plaintiff's looks, his comment supporting Dr. Chaney's 2014 text message, and report that Mr. Ladner would adjust and/or scratch his crotch "continuously" around Plaintiff's team members and in Plaintiff's presence but not around male staff. Ms. Stancil called Dr. Singleton into the meeting. Ms. Stancil and Dr. Singleton told Plaintiff that they would meet with Mr. Ladner to discuss her report.

*Id.*

As discussed, Plaintiff's EEOC charge makes no factual allegations that correlate to the facts alleged in her complaint related to her January 10, 2018 meeting with Mrs. Stancil and Dr. Singleton. Rather, Plaintiff's description of that meeting in her EEOC charge was "regarding the disparities in the wages and overall quality of life between the Female basketball team and the Male basketball team," and "about the way that Mr. Ladner speaks to [her] in a condescending manner." (Doc. No. 11-1, at 4.) The charge does not contain any 2014 text message, follow up commentary from Mr. Ladner, or any alleged acts of sexual harassment. *Id.* Indeed, the only mention of Mr. Ladner in the charge as it pertains to the January 10, 2018 meeting is that Plaintiff addressed with Mrs. Stancil and Dr. Singleton that Mr. Ladner speaks to her in a condescending manner. But again, this statement was made in the context of what Plaintiff described as a meeting about disparities in the wages and overall quality of life between the women's basketball team and the men's basketball team. *Id.* Without any further facts, one cannot reasonably interpret those allegations to be that of sexual harassment, particularly when

there is a total disconnect between the subject of that meeting in her charge versus what is contained in her complaint. Moreover, simply checking the boxes pertaining to "sex" and "discrimination" does not sufficiently inform a claim of sexual harassment. *See Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (stating that simply checking sex discrimination box did not allow sexual harassment claim because EEOC charge only complained of disparate treatment, a wholly diverse claim from harassment). Thus, the Court recommends that Jarvis's Motion (Doc. No. 11) be granted as to Plaintiff's Title VII claim for sexual harassment, and that Plaintiff's sexual harassment claim be dismissed for failure to exhaust her administrative remedies.[2]

As to her claim of discrimination, that claim was clearly presented in her EEOC charge and similarly alleged in her complaint. In her charge, Plaintiff states that on November 28, 2018 and January 11, 2018 she complained about the disparities in the wages and overall quality of life between the women's basketball team and the men's basketball team. (Doc. No. 11-1, at 4.) Plaintiff asserts factual allegations related to these disparities in her complaint. *See* Doc. No 1, at ¶¶ 24, 33, 53. As the failure to exhaust is the only basis presented for dismissal on the sexual discrimination claim and the Court finds that Plaintiff has exhausted her administrative remedies on that claim, the Court recommends that Jarvis's Motion (Doc. No. 11) be denied as it pertains to Plaintiff's Title VII sex discrimination claim.

### b.  Retaliation Claim

Finally, as to Plaintiff's Title VII retaliation claim, Jarvis contends that Plaintiff has alleged no facts to support a claim for retaliation. (Doc. No. 11, at 13.) Specifically, Jarvis argues

---

[2] Because the Court recommends dismissal of Plaintiff's Title VII harassment claim, the Court need not consider whether condescending language creates a cognizable claim under Title VII at this time. Further, because the Court has found that Plaintiff has not exhausted her administrative remedies as to her sexual harassment claims, the Court need not consider whether the claims were timely raised.

that Plaintiff's retaliation claim cannot stand because the alleged facts show that her employment contract was renewed after Plaintiff filed her charge with the EEOC. *Id.* Plaintiff contends that she has alleged facts to support retaliation because she filed a charge on February 21, 2018, and on March 2, 2018, Mr. Ladner was overheard telling players' parents that he was going to fire Plaintiff and she was fired four months later. (Doc. No. 21, at 14.)

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). However, Plaintiff need not establish her prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511, (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *see also Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). Instead, the ordinary rules for assessing the sufficiency of a complaint pursuant to Rule 8(a)(2) apply. *See id*. ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case."); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

Here, Plaintiff alleges that she engaged in protected activity when she filed an EEOC charge on February 13, 2018 and it was received by Jarvis on February 21, 2018. (Doc. No. 1, at ¶¶ 51, 55.) Plaintiff further alleges she suffered an adverse employment action when she was

terminated just four months later, and that the temporal proximity of that decision and the statements made by Mr. Ladner to Plaintiff's players' parents that he was trying to find a reason to fire her, support her claim. *Id.* at ¶¶ 56, 59, 85. While Jarvis contends that this claim cannot be supported because Plaintiff alleges her employment contract was renewed on June 8, 2018, Jarvis cites no support for the proposition that a renewed employment agreement would defeat any claim for retaliation. Indeed, here, Plaintiff alleges she was terminated just twenty odd days after her contract was renewed. *Id.* at ¶ 64, 85. The Court finds these allegations sufficient to satisfy Plaintiff's burden of pleading a claim for Title VII retaliation. As such, the Court recommends that Jarvis's Motion (Doc. No. 11) be denied as to Plaintiff's Title VII claim for retaliation.

### B.  FMLA Claims

Jarvis contends that Plaintiff cannot asserts claims for violations of the FMLA because Plaintiff failed to comply with the regulations. (Doc. No. 11, at 15.) Specifically, Jarvis argues that Plaintiff's FMLA request did not contain the medical evidence necessary to comply with FMLA guidelines. *Id.* at 16. Plaintiff contends that Jarvis was required to explain in writing what additional information was necessary to complete her FMLA certification and that, as alleged, she requested this information on June 21, 2018. (Doc. No. 21, at 15.) Plaintiff contends that Jarvis was required to provide her seven calendar days to cure any deficiency in her paperwork. *Id.* at 16. Plaintiff alleges that Jarvis then terminated Plaintiff exactly seven days after informing Plaintiff it found her certification to be deficient, just one business day after Plaintiff's doctor returned to the office to possibly cure any such deficiency. *Id.* at 17. As such, Plaintiff argues that Jarvis interfered with her FMLA rights and retaliated against her for requesting FMLA leave. *Id.*

### a.  FMLA Interference

FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right. 29 U.S.C. § 2615(a)(1); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To establish a prima facie interference case under the FMLA, a plaintiff must show that (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to leave; (4) the plaintiff gave proper notice of her intention to take FMLA leave; and (5) the defendant denied the plaintiff the benefits to which she was entitled under the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x. 312, 316 (5th Cir. 2013). Here, Plaintiff alleges that she was an eligible employee, that Jarvis was subject to the FMLA's requirements, that she was entitled to leave, that she gave notice of her leave, and that Jarvis failed to provide her the proper correspondence to approve or deny her FMLA leave. Doc. No. 1, at ¶¶ 8–14, 76, 77, 79–81, 83–85. Specifically, Plaintiff alleges that Jarvis did not provide Plaintiff with individualized notice that she was eligible to take FMLA leave and was required to provide her such notice within five business days of when they acquired knowledge that her leave may be for an FMLA-qualifying reason pursuant to 29 C.F.R. § 825.300(b)(1). *Id.* at ¶ 101. Plaintiff therefore alleges that Jarvis's failure to follow 29 CFR § 825.300(b)(1)'s notice requirements constituted interference with the exercise of her FMLA rights. *Id.* at ¶102. The Court finds these allegations sufficient to state a claim for interference.

Jarvis's argument is essentially that Plaintiff's FMLA request was insufficient because it did not contain the necessary medical evidence and Plaintiff failed to comply with Jarvis's request that the form be revised and submitted within seven days. (Doc. No. 11, at 16.) Whether or not Plaintiff's certification was sufficient and whether or not Plaintiff properly complied with

the requests of Jarvis, or whether Jarvis complied with the FMLA guidelines, are all questions of fact that are not appropriate for this Court to resolve on the pleadings. Discovery is essential to develop the facts regarding whether Plaintiff had taken the necessary steps to invoke her FMLA rights and whether Jarvis interfered with her attempts to take FMLA leave. Accordingly, the Court recommends that Jarvis's Motion (Doc. No. 11) be denied as to Plaintiff's FMLA interference claim.

### b.  FMLA Retaliation

To establish a prima facie retaliation case under the FMLA, a plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse employment action was taken because she sought protection under the FMLA. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). Jarvis makes the same arguments that Plaintiff failed to take the steps necessary to secure her FMLA leave. (Doc. No. 11, at 16–17.) For the same reasons discussed above, the Court cannot resolve whether Plaintiff or Jarvis complied with FMLA regulations on a motion to dismiss as those questions raise factual disputes between the parties that need further development in the record. The Court also finds it inappropriate to convert the motion to one for summary judgment where further factual development of the record is warranted here. The Court simply looks to whether the facts as pled are sufficient. Here, Plaintiff has alleged she filed for FMLA leave and that her exercise of those rights was a motivating factor in her termination. (Doc. No. 1, at ¶¶ 111–16.)  The Court finds the allegations sufficient to state a claim for FMLA retaliation. Indeed, Jarvis does not challenge the sufficiency of the allegations pertaining to a claim for FMLA retaliation. Accordingly, the Court recommends that Jarvis's Motion (Doc. No. 11) be denied as to Plaintiff's FMLA retaliation claim.

### C.  Libel Claim

Jarvis argues that Plaintiff's libel claim fails because the alleged communication—Jarvis's publication to law enforcement—is privileged. (Doc. No. 11, at 18–19.) Specifically, Jarvis argues that the only allegation of publication is the report of a suspected crime to law enforcement and that Texas has long recognized a qualified privilege for the communication of wrongful acts to an official authorized to protect the public. *Id.* at 19. Plaintiff contends that she alleges Jarvis acted with actual malice in publishing a fact which impeached her honesty, injured her business reputation, and imputed a crime against her. (Doc. No. 21, at 11.) Plaintiff further contends that the facts supporting this claim are well pled in that she alleged that Mr. Ladner had been trying to find a reason to fire Plaintiff.

"In cases of libel and slander, Texas has long recognized at least 'a qualified privilege' for 'the communication of alleged wrongful acts to an official authorized to protect the public from such acts.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 980 (5th Cir. 1995) (quoting *Zarate v. Cortinas*, 553 S.W.2d 652, 655 (Tex. Civ. App.—Corpus Christi 1977, no writ)). Qualified privilege operates as an affirmative defense and, "the defendant bears the burden of proving privileged publication unless the plaintiff's petition affirmatively demonstrates privilege." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (citing *Denton Pub. Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970)). "If a defendant establishes the privilege, the burden shifts to the plaintiff to prove that the defendant made the statements with actual malice. Actual malice, in the defamation context, means 'the making of a statement with knowledge that it is false, or with reckless disregard of whether it is true.' Qualified privilege presents a question of law when the statements at issue employ unambiguous language and where the facts and circumstances of publication are undisputed." *Id.* (internal citations omitted).

Here, while Jarvis has invoked the affirmative defense of qualified privilege, Plaintiff alleges that "Defendant Jarvis Christian College, Inc. with actual malice published a false statement of fact referring to Plaintiff which impeached Plaintiff's honesty, injured Plaintiff's business reputation and imputed a crime against Plaintiff." (Doc. No. 1, at ¶ 120.) While it is not expressly stated in her complaint, the factual basis underlying this allegation presumably relates to the theft report made by Jarvis relating to property Plaintiff alleged removed from her office. *See id.* at ¶ 89.  In this regard, Plaintiff has alleged facts to infer actual malice in that she alleges that "Mr. Ladner was overheard saying to athletes' parents that he is trying to find any reason to fire Plaintiff" and telling them that "changes would be made." *Id.* at ¶¶ 56, 59. Thus, although Jarvis has raised privilege, taking these allegations as true, Plaintiff has alleged facts to sufficiently suggest the statements in question were made with actual malice. As such, the Court recommends that Jarvis's Motion (Doc. No. 11) be denied as to Plaintiff's libel claim.

### D.  Negligence Claims

Finally, Jarvis argues that Plaintiff's claims for negligent supervision, training, and retention are barred by the Texas Workers Compensation Act ("the Act"). (Doc. No. 11, at 17.) Specifically, Jarvis argues that Plaintiff's negligence claims are that she was harmed by another employee while trying to perform her job duties and that Jarvis failed to respond adequately. *Id.* at 18. Therefore, Jarvis argues that the claims are pre-empted by the Act. *Id.* Plaintiff does not respond to this argument. (Doc. No. 21.)

Because Plaintiff has failed to respond in opposition to this argument, the Court presumes that Plaintiff does not controvert this argument and has no evidence to offer in opposition. *See* L.R. CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to

offer in opposition to the motion."). On this basis alone, the Court finds that Jarvis's Motion (Doc. No. 11) should be granted as to Plaintiff's negligence claims. However, even considering the allegations, the Court finds that Jarvis's Motion (Doc. No. 11) should be granted as to Plaintiff's negligence claims.

Here, the entirety of Plaintiff's allegations as to negligent supervision, training, and retention, are as follows:

> Plaintiff alleges that the conduct of Defendant Jarvis Christian College, Inc. constituted negligent supervision, training and retention. Plaintiff alleges that Defendant Jarvis Christian College, Inc. did not properly screen, evaluate, investigate, or take any reasonable steps to determine whether Dr. Singleton and Bobby Ladner were unfit, incompetent, or a danger to third parties. Defendant Jarvis Christian College, Inc. knew or should have known that Dr. Singleton and Bobby Ladner was unfit and could foresee that Dr. Singleton and Bobby Ladner would come in contact with Plaintiff, creating a risk of danger to Plaintiff. Defendant JCC's failure to exercise reasonable care in the supervision, training and retention of Dr. Singleton and Bobby Ladner was the proximate cause of damages to Plaintiff for which Plaintiff hereby sues.

(Doc. No. 1, at ¶ 121.)

Indeed, these negligence allegations are based upon the alleged danger Plaintiff faced in the workplace by Jarvis's hiring, supervision, and retention of her fellow coworkers. *Id*. Jarvis is correct in that "[t]he Act provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). Because Plaintiff's allegations are based upon the negligence of Jarvis in its supervision, training, and retention of Dr. Singleton and Mr. Ladner, her recovery on these claims is foreclosed by the Act. *See id.* (finding that plaintiff's negligence claims were foreclosed where her allegations were based on harm that occurred while plaintiff was trying to do her job and defendant failed to respond adequately). Accordingly, the Court recommends that Jarvis's Motion (Doc. No. 11) be granted as to Plaintiff's negligence claims.

**CONCLUSION**

For the reasons stated herein, the Court **RECOMMENDS** that Jarvis's Motion (Doc. No. 11) be **GRANTED** as to Plaintiff's claims for Title VII sexual harassment and negligence and **DENIED** as to Plaintiff's claims for Title VII discrimination and retaliation, FMLA interference and retaliation, and libel.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen (14) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 25th day of January, 2019.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE