# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| AKIA STANTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 6:18-cv-479-JDK-JDL |
| | § | |
| JARVIS CHRISTIAN COLLEGE, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER ON PLAINTIFF'S POST-TRIAL MOTIONS

Before the Court are several post-trial motions by Plaintiff Akia Stanton, including a motion for interest and liquidated damages (Docket No. 117), a motion for reinstatement or front pay (Docket No 118), a motion for bill of costs (Docket No. 119), and two motions for attorney's fees (Docket Nos. 120; 149).

As recounted in more detail in a previous Court Order,[1] Stanton was the head women's basketball coach at Jarvis Christian College before the college fired her in June 2018.  In September 2018, Stanton sued Jarvis alleging, among other things, FMLA interference and FMLA retaliation.  A February 2020 jury trial resulted in a jury verdict in Stanton's favor on both FMLA claims and a damages award of $12,500.  Docket No. 113.

## I.      Pre- and Post-Judgment Interest

Stanton seeks pre-judgment interest under 29 U.S.C. § 2617(a)(1)(A)(ii) and post-judgment interest under 28 U.S.C. § 1961.

---

[1] *See* Docket No. 161.

1

**A.**

Pre-judgment interest "at the prevailing rate" is mandatory when an employer violates the FMLA and should be added to the damages awarded for lost wages and benefits.  29 U.S.C. § 2617(a)(1)(A)(ii) (providing that an employer "shall be liable" for interest); *see also Crankshaw v. City of Elgin*, No. 1:18-cv-75, 2019 WL 3883566, at *3 (W.D. Tex. Aug. 8, 2019).  Stanton argues that state law governs the pre-judgment interest rate and that interest should be assessed at 5% per annum as per Texas Finance Code § 304.003.  Docket No. 117 at 4.  Jarvis's response does not address the appropriate interest rate.  Nevertheless, the Court disagrees with Stanton's proposed pre-judgment interest rate.

Most district courts apply the current prime rate published by the Federal Reserve System Board of Governors as the appropriate pre-judgment interest rate in FMLA cases.  *See, e.g.*, *Crankshaw*, 2019 WL 3883566, at *3; *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 WL 549380, at *4 n.1 (S.D. Tex. Feb. 11, 2014) (collecting cases applying the prime rate).  Based on data available from the Federal Reserve website,[2] the Court calculates the average prime rate between Stanton's termination in June 2018 and the date of judgment in August 2020 to be 4.82%.  Accordingly, the Court will award Stanton pre-judgment interest on the jury's damages award at that rate—approximately $1.65 per day—from the date Jarvis terminated her employment, June 29, 2018, through the date of Judgment.

**B.**

Post-trial interest is required under 28 U.S.C. § 1961, which also sets the rate.  The post-judgment interest rate for the week ending August 21, 2020 was 0.13%.[3]  The Court will award

---

[2] *See* The Fed – Selected Interest Rates, https://www.federalreserve.gov/releases/h15/.

[3] *See* http://www.txed.uscourts.gov/?q=post-judgment-interest-rates.

Stanton post-judgment interest at that rate from the date of Judgment until Jarvis pays the full amount of the Judgment.

## II.      Liquidated Damages

Stanton also seeks liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).  Docket No. 117.

### A.

Section 2617(a)(1)(A)(iii) generally provides for doubling the actual damages awarded under the FMLA unless the employer's FMLA violation was "in good faith" and the employer had "reasonable grounds" for believing that its actions were not an FMLA violation.  The Fifth Circuit has explained:

> Doubling of an award is the norm under the FMLA, because a plaintiff is awarded liquidated damages in addition to compensation lost.  The district court's discretion to reduce the liquidated damages "must be exercised consistently with the strong presumption under the statute in favor of doubling."

*Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) (citing *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998)).  The employer thus "faces a 'substantial burden' of demonstrating good faith and a reasonable belief that its actions did not violate the [statute]." *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (quoting *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998)).

### B.

Here, Jarvis has failed to meet its burden.  At trial, Jarvis presented insufficient evidence that Jarvis president Dr. Lester Newman—who ultimately decided to deny Stanton's FMLA leave request and terminate her—or those advising Dr. Newman acted in subjective good faith or had an objectively reasonable basis for the decision.  Dr. Newman testified that he was not well acquainted with FMLA requirements.  *E.g.*, Trial Tr. 2/10/2020 at 82:21–24.  And Jarvis's representative at

trial, chief of staff Ms. Cynthia Stancil, testified that Jarvis's human resources director received some FMLA training, but provided no specifics about that training.  Trial Tr. 2/11/2020 at 99:4–16.  Jarvis did not call the HR director, Dr. Daphne Singleton at the time of Stanton's termination, to testify and introduced no evidence regarding her subjective good faith.

Dr. Newman, moreover, testified that he was fully aware of Stanton's medical leave request when he terminated her and that her request was a "factor" he considered.  Trial Tr. 2/10/2020 at 75:14–24, 130:11–131:14.  But "[t]he regulations confirm that the FMLA protects employees from having their exercise of FMLA rights considered as 'a' factor in the decision-making process."  *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 334 (5th Cir. 2005)  Stanton's counsel also effectively impeached Dr. Newman with his own deposition testimony and interrogatory responses stating that Stanton's request for FMLA leave played a role in his decision to terminate her.  Trial Tr. 2/10/2020 at 76:13–22; *see also* Docket No. 161 at 12–13.

Jarvis argues that it "consulted with legal counsel at each step of the process related to Plaintiff's request for time off."  Docket No. 122 at 4.  Jarvis, however, cites no evidence in support of this assertion.  At trial, both Dr. Newman and Ms. Stancil testified in broad generalities about seeking legal advice on FMLA questions, but no one from Jarvis testified about any specific legal advice sought on Stanton's FMLA leave request or the content of any legal advice received.  *See, e.g.*, Trial Tr. 2/10/2020 at 81:13–82:3; 143:22–145:1; Trial Tr. 2/11/2020 at 116:24–117:17.  Dr. Newman also testified that the attorney Jarvis would have consulted for FMLA advice was not an attorney specializing in employment law, but was Jarvis's attorney for all matters.  Trial Tr. 2/10/2020 at 144:10–19.

Jarvis also argues that it reasonably denied Stanton's leave request because Stanton failed to cure the deficiencies in her FMLA certification form within seven days.  Docket No. 122 at 7.

4

But the Fifth Circuit has explained that the FMLA "requires cooperation from the employer *and* employee." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 582 (5th Cir. 2006). And here, the evidence showed Stanton cooperating with Jarvis up until the moment Jarvis terminated her:  she submitted the certification form when Jarvis requested it, contacted Jarvis a few days later requesting an update on her leave request, and attempted to address the alleged deficiencies.  *See* Docket No. 161 at 9–11.  Jarvis's termination of Stanton while she was trying to cooperate does not evidence good faith.

Jarvis could have provided records of its staff's FMLA training, testimony by Dr. Singleton or other Jarvis officials about FMLA training or research, or specifics about the legal counsel it sought on Stanton's FMLA request.  But Jarvis presented none of that.  *See, e.g.*, *Morris v. VCW, Inc.*, No. 95-0737-CV-W-3-6, 996 WL 740544, at *3 (W.D. Mo. Dec. 26, 1996) (citing *Barcellona v. Tiffany English Pub*, 597 F.2d 464, 469 (5th Cir. 1979)) ("Defendant introduced no evidence at trial of any reliance on agency regulations or administrative or judicial interpretations, nor of any attempt by its President to seek legal advice before making the decision to terminate plaintiff's employment instead of granting her request for leave.  Good faith requires some duty to investigate potential liability under the Act.").  Accordingly, the Court finds that Jarvis has not demonstrated that it acted in good faith or that it had reasonable grounds for denying Stanton's FMLA leave or terminating her employment.

Without a showing of good faith and reasonable grounds for believing its actions did not violate the FMLA, § 2617(a)(1)(A)(iii) mandates that the Court award liquidated damages equal to the lost wages and benefits Stanton suffered and the pre-judgment interest on that amount. Accordingly, Stanton's motion for liquidated damages is **GRANTED**.

### III.     Reinstatement or Front Pay

Stanton also seeks the equitable remedy of reinstatement to her position at Jarvis, or, in the alternative, five years of front pay.  Docket No. 118.

### A.

The FMLA provides that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  29 U.S.C. § 2617(a)(1)(B).  Reinstatement is generally the preferred equitable remedy.  *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n.27 (5th Cir. 2001).  However, where the parties agree that reinstatement is not feasible, front pay can be an appropriate remedy.  *Id.*; *see also Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007).  While calculating front pay is, at best, "intelligent guesswork," there are several factors to consider in determining the amount of a front pay award, including:  (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors that could validly affect the employer/employee relationship.  *Id.* (citing *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir.1991)).

### B.

Reinstatement is not a viable option here.  Stanton explains that Jarvis has already hired another head women's basketball coach and that there is animosity between Jarvis and Stanton based on the events around the time of her termination.  Docket No. 118 at 6.  Jarvis agrees that reinstatement is not feasible.  Docket No. 123 at 4 ("Jarvis respectfully requests that the Court declines to order the reinstatement of Plaintiff into a position that is already filled and that she does not want.").  The Court agrees and therefore declines to order reinstatement.  The head women's basketball coach currently in place should not be displaced in favor of Stanton.  *See Palasota v.*

*Haggar Clothing Co.*, 499 F.3d 474, 489 (5th Cir. 2007) (displacing an existing employee to reinstate plaintiff is disfavored).  And Jarvis has accused Stanton of taking college property and destroying files and property.  DX 121.  Regardless of the truth of the allegation, the allegation itself leads to hostility that makes reinstatement infeasible here.  *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001) (citing *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 257 (5th Cir.1996)) (reinstatement may be infeasible where "a hostile relationship exists between the employer and the plaintiff").

The Court also finds front pay inappropriate in this case for at least two reasons.

*First*, the evidence shows that it was unlikely that Stanton would have remained as the head women's basketball coach at Jarvis for another five years.  Before her termination, the athletic director recommended that Stanton's contract not be renewed for 2018–2019 based on "several complaints" and her poor winning percentage.  Trial Tr. 2/12/2020 at 82:23–83:21.  Although Dr. Newman renewed Stanton's contract for that year against the athletic director's recommendation, there is no indication the athletic director's recommendation would change in the future or that Dr. Newman would continue to override it.  More importantly, Stanton's own words indicated she was unhappy at Jarvis.  In a January 2018 email to a friend, Stanton explained that she did not really like working at Jarvis, but that it was "only for now" and "a stop I had to make to further my career."  Trial Tr. 2/11/2020 at 217:16–25; DX 46.  She also stated, "I want to go to another program or Institution [sic] that fully supports all athletic programs."  DX 46.  Stanton testified at trial that she was "constantly applying for jobs" and looking for the next opportunity.  Trial Tr. 2/11/2020 at 169:2–5.  While Stanton did state that she planned to continue her career at Jarvis and speculated that she would have been coaching a winning women's team for the two years after she was fired, *id*. at 169:17–170:13, the bulk of the evidence contradicts that testimony.  Rather,

based on the evidence at trial, the Court finds that Stanton was ready to leave Jarvis at the first good opportunity and that her remaining there for several additional years was unlikely.

*Second*, "a substantial liquidated damages award may indicate that an additional award of front pay is inappropriate or excessive." *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992). Here, the Court has awarded liquidated damages equal to Stanton's lost wages and benefits. An award of front pay would overcompensate Stanton for the injury caused by Jarvis's FMLA violations.

Because the Court finds both reinstatement and front pay inappropriate here, Stanton's motion seeking that relief is **DENIED**.

## IV.     Attorney's Fees

Stanton requests an award of attorney's fees pursuant to 29 U.S.C. § 2617(a)(3) in the amount of $115,840. Docket Nos. 120; 149.

### A.

The FMLA entitles a prevailing plaintiff to "a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). The court, however, has the discretion to determine the appropriate amount of the fee. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 303 (4th Cir. 2009). Counsel bears the burden of showing the reasonableness of her fee request and that she exercised good billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

The lodestar method—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate—provides an initial estimate of a reasonable attorney's fee. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable hourly rate should be similar to rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895–96 n.11. Moreover, the "relevant market for purposes of

determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  "The fee applicant bears the burden to prove by competent evidence that the requested rate is reasonable."  *Powell v. Comm'r*, 891 F.2d 1167, 1173 (5th Cir. 1993) (citing *Blum*, 465 U.S. at 895 n.11).  Further, the trial court itself is considered an expert as to the reasonableness of attorney's fees, and therefore may exercise its own expertise and judgment in making an independent valuation of appropriate attorney fees.  *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978)).

The Court may adjust the lodestar figure upward or downward based upon the respective weights of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  The twelve *Johnson* factors include:

(1)   the time and labor required for the litigation;

(2)   the novelty and difficulty of the questions presented;

(3)   the skill required to perform the legal services properly;

(4)   the preclusion of other employment by the attorney due to acceptance of the case;

(5)   the customary fee;

(6)   whether the fee is fixed or contingent;

(7)   time limitations imposed by the client or the circumstances;

(8)   the amount involved and the result obtained;

(9)   the experience, reputation, and ability of the attorneys;

(10)  the "undesirability" of the case;

(11)  the nature and length of the professional relationship with the client; and

(12)  awards in similar cases.

*Johnson*, 488 F.2d at 717–19.  "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account."  *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *Shipes v. Trinity Indus.*, 978 F.2d 311, 319–20 (5th Cir. 1993)).  "Such reconsideration is impermissible double-counting."  *Id.*

**B.**

Stanton was represented solely by Katherine Britton in this case.  Stanton argues that $400 per hour is a reasonable hourly rate for Ms. Britton and that Ms. Britton worked 289.6 hours on the FMLA claims in this case.  Docket No. 120 at 4; Docket No. 149 at 4.  Stanton therefore requests $115,840 in attorney's fees.

**1.**

The Court finds that the number of hours Ms. Britton spent on this case is reasonable.  Ms. Britton litigated the case for almost two years and served as the lead and only counsel in a three-day jury trial.  In support of the hours spent on the matter, Ms. Britton provides billing records detailing the time she spent working only on the FMLA claims in this case.  Docket No. 120, Ex. A-3; Docket No. 149, Ex. A.  Jarvis argues that Ms. Britton should have submitted her complete billing records so the Court could segregate the FMLA claims Stanton prevailed on from the other alleged claims that were dismissed before trial.  Docket No. 129 at 3.  The Court disagrees.  "A party requesting attorneys' fees carries the burden of proof and the duty to segregate fees."  *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir. 1998) (citing *Smith v. United Nat'l Bank–Denton*, 966 F.2d 973, 978 (5th Cir.1992)).  Thus, it was Stanton's burden to segregate her fees based on claims, and Ms. Britton did so.  A review of the records shows that Ms. Britton included only the time she worked on the FMLA claim.  Jarvis has not identified any specific entries that are inappropriate.  And it is unclear how including the full billing records—that is, providing billing records for time worked on Stanton's

non-FMLA claims—would be of any use here.  Accordingly, the Court will use 289.6 hours in calculating the lodestar amount.

### 2.

The Court does not, however, find that $400 per hour is a reasonable fee for Ms. Britton's work in this case.  In support of the $400 per hour billing rate, Stanton provides a table surveying rates requested by attorneys and rulings by Texas courts on attorney billing rates for employment cases.  Docket No. 120, Ex. A-4.  Stanton also provides the declaration of Tyler attorney William S.  Hommel, Jr.  Docket No. 120, Ex. B.

Jarvis argues that the table surveying past employment-case fee applications and rulings fails to show:  "(1) how the facts of the cases correlate to the facts of this case, (2) how the experience and skill of the attorneys' correlate to Plaintiff's counsel, or (3) how the relevant markets differ from the relevant market in this District."  Docket No. 129 at 6.  The Court agrees. A list of past attorney fee requests and awards is unhelpful when the experience, skill, reputation, and location of the listed attorneys vary extensively.  *Blum*, 465 U.S. at 895–96 n.11 (requested rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation").  And Stanton provides no way to correlate the various attorney rates in the table with the skill, experience, and reputation of Ms. Britton.

The Court also finds the declaration of Mr. Hommel unpersuasive.  Mr. Hommel opines that "$400 per hour is a reasonable hourly rate for a Plaintiff's attorney of Katherine Britton's experience, skill, and expertise and is customary for East Texas."  Docket No. 120, Ex. B ¶ 5. While the Court does not doubt Mr. Hommel's credentials, Mr. Hommel does not support his conclusion with any evidence, such as identifying other similarly situated attorneys that bill $400 per hour.  And expert opinion "must be more than unsupported speculation or subjective belief."

*Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)).  Accordingly, the Court will not rely on Mr. Hommel's declaration.

In accord with other Texas courts, the Court will instead look to the State Bar of Texas Hourly Fact Sheet publication[4] for guidance on prevailing rates in the community for similar services.  *See, e.g.*, *Alvarez v. McCarthy*, No. 6:16-cv-175, 2020 WL 1677715, at *6–7 (W.D. Tex. Apr. 6, 2020) (relying on the Fact Sheet to gauge the reasonableness of rates); *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, No. H-14-1368, 2020 WL 821879, at *9 (S.D. Tex. Feb. 19, 2020) (taking judicial notice of the Fact Sheet); *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17-cv-546, 2020 WL 1902530, at *19 (E.D. Tex. Jan. 13, 2020) (accepting rates supported by Fact Sheet); *Leal v. All-City Trailer Repair, L.P.*, No. 3:16-cv-03274, 2018 WL 4913786, at *2 (N.D. Tex. Oct. 10, 2018) (comparing rate to Fact Sheet).  According to the Fact Sheet, the median rate for a labor and employment attorney in the East & Northeast Texas MSAs was $240 in 2015. The Fact Sheet indicates that the median rate for an attorney with eleven to fifteen years' experience in the East & Northeast Texas MSAs was $235 in 2015.[5]  Using these two medians, the Court determines that $237.50 is a reasonable 2015 rate for Ms. Britton's work.

Ms. Britton performed most of her work in this case in 2019.  Adjusting the 2015 rate of $237.50 for inflation, a 12.73% increase from 2015 to 2019, results in a 2019 rate of $267.74.[6] Multiplying the $267.74 rate by the 289.6 hours worked results in a lodestar value of $77,537.50.

---

[4]  STATE BAR OF TEX., 2015 HOURLY RATE FACT SHEET (Aug. 2016), *available at* https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID= 34182.

[5] As of 2019, Ms. Britton had around twelve years of experience as an attorney.  Docket No. 120, Ex. A-1.

[6] *See Prices for Legal Services, 2015–2019*, OFFICIAL DATA FOUND., https://www.officialdata.org/Legal-services/price-inflation/2015-to-2019.

There is a strong presumption that the lodestar represents the reasonable fee.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  And "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  The Court finds that several of the *Johnson* factors are already included in this lodestar figure, including factors one (the time and labor required for the litigation), three (the skill required to perform the legal services properly), five (the customary fee), and nine (the experience, reputation, and ability of the attorneys).  Neither party has argued—and the Court has found nothing in the record to suggest—that factors two (the novelty and difficulty of the questions presented), four (the preclusion of other employment by the attorney due to acceptance of the case), six (whether the fee is fixed or contingent), seven (time limitations imposed by the client or the circumstances), ten (the "undesirability" of the case), eleven (the nature and length of the professional relationship with the client), and twelve (awards in similar cases) are relevant here or warrant an adjustment to the lodestar figure.

That leaves factor eight—the amount involved and the result obtained.  Jarvis argues that the amount of actual damages awarded justifies either decreasing or eliminating the attorney's fee award here.  Docket No. 129 at 7–9.  The Court disagrees.  Jarvis is correct that Stanton originally advanced several claims against the college, including FMLA, Title VII, libel, and negligent supervision, training, and retention claims.  Docket No. 1.  And Stanton did not succeed on most of those claims.  *See* Docket Nos. 25; 64.  However, Stanton largely succeeded on her FMLA claims, winning the jury verdict on FMLA interference and FMLA retaliation at trial and being awarded $12,500 in actual damages by the jury.  Docket No. 113.  Stanton also succeeded on her FMLA liquidated damages claim.  *See* Section II, *supra*.  And because Stanton has sought only attorney's fees for work done on the FMLA claims, the lodestar figure has already excluded

Stanton's unsuccessful claims.  Further, "while the amount of damages awarded is one factor to be considered in setting the amount of attorney's fees, the district court must also carefully consider any other relevant *Johnson* factors."  *Cobb v. Miller*, 818 F.2d 1227, 1235 (5th Cir. 1987).  "In the absence of other *Johnson* factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award."  *Id*.  Accordingly, because the relatively low damages award is the only relevant *Johnson* factor potentially favoring a decrease in the lodestar amount, the Court declines to adjust the fee award solely on that basis.

*       *       *       *

Based on the lodestar amount calculated, and consideration of the *Johnson* factors, the Court awards Stanton $77,537.50 in attorney's fees as required under 29 U.S.C. § 2617(a)(3).

## V.       Bill of Costs

Stanton seeks $3,645.41 in costs under Federal Rule of Civil Procedure 54(d).  Docket Nos. 119; 162.  Stanton's proposed bill of costs lists eligible expenses under 28 U.S.C. § 1920, each of which she has substantiated with a receipt or invoice.  Docket No. 162, Exs. A & B. Jarvis's only opposition to Stanton's request for a bill of costs is "there was no evidence that she was protected under the Act."  Docket No. 128 at 1.  Jarvis does not challenge any particular expense on Stanton's bill of costs or otherwise address the substance of Stanton's request.

The Court has addressed Jarvis's substantive argument and rejected it.  Docket No. 161. Accordingly, because Jarvis does not challenge the substance of Stanton's proposed bill of costs, and the Court finds the requested costs appropriate under § 1920, the Court **GRANTS** the motion for entry of bill of costs.

## VI.       Conclusion

As explained above, the Court **GRANTS-IN-PART** Stanton's motion for Liquidated Damages and Interest (Docket No. 117), **DENIES** Stanton's motion for reinstatement or front pay

14

(Docket No. 118), **GRANTS** Stanton's motion for entry of bill of costs (Docket No. 119, 162), and **GRANTS-IN-PART** Stanton's motions for attorney's fees (Docket Nos. 120; 149).  The Court will issue a separate Final Judgment in accord with the jury verdict and this Order. Accordingly, Stanton's motion for entry of judgment (Docket No. 150) is **DENIED AS MOOT**.

So **ORDERED** and **SIGNED** this **27th**  day of  **August, 2020.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE